Lipscomb, J.
It seems to me very clear that such certificates were not subject to be levied on and sold at common law; that, like any other evidence of debt or an interest secured, they were not supposed to possess any intrinsic value, and could not have been the subject of larceny. It has been so considered'in most of the States where the common law forms the basis of their jurisprudence, and hence statutes have been enacted in most of them making it larceny to steal notes and such like evidence of debt or valuable interest. It is true that a court of chancery can reach a fund secured in the stocks of a corporation, but it is not by acting on the paper evidence of the person entitled to it, but by a decree acting at once directly upon the trust fund in the hands of the-trustee, the corporation. Had Dawson been owner of shares of value in a. stock company or private corporation, and had judgment at law been obtained' against him and no property liable to be levied on for the satisfaction of the-judgment been found, this fund so owned by him could have been subjected-by a decree of a court of equity to the satisfaction of the judgment, but not. by ordering the sheriff to levy on and sell the paper evidence of his interest. Such a decree was never heard of or thought of by any one at all conversant with equity jurisprudence. In like manner the rights and credits of a debtor-are often subjected to the satisfaction of a judgment against him, under the provisions of a statute, by way of garnishment of his debtor, without having any regard to the evidence of such debt.
But if these considerations were wrong-, and such certificates, in the absence of any express law in relation to the manner in which they should be transferrd, were liable to be levied on by execution and sold, the law referred to by the respondent is a sufficient answer why the mandamus should not issue. Hone can-deny but that it was competent for the Government to prescribe in what way such evidence of its indebtedness that it had directed to be issued to the creditor should be transferred; and it was a wise policy to provide against being brought into controversies as to the ownership of such evidences so issued of its indebtedness. But suppose the Legislature in passing- this law really intended to-protect the creditor of the Government from what has been attempted in this case from a forced sale of his claim: such motive, so far as being censurable, would be worthy of the highest commendation. The creditor had perhaps already suffered from the inability of the State to pay what was justly due to-him. The State cannot pay now, but is willing to acknowledge the debt and to protect him as much as possible from further sacrifice; and it therefore provides that the creditor shall never be divested against his will of this demand so acknowledged; and. to provide against a forced sale, it will not prevent a transfer of the indebtedness in any other way than upon the stock books by the creditor himself, or his agent whilst he is living, and when he is dead, by his legal representative, and by this means enable him to wait until the State is able to pay the debt. Whatever may have been the motive that governed the Legislature in making the law. it is sufficiently clear that no transfer can be made but in the mode prescribed by law. The judgment must therefore be affirmed.
Hemphill, Ch. J., and Wheeler, J.
We rest our judgment in this case-solely on the ground that the statute prohibited the transfer of the certificates in question in any other manner than that designated and prescribed- *170 in the act referred to. Upon the other questions discussed we express n© opinion.
Judgment affirmed.